UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| JON ROBERT ADAMS, | ) | |
|---|---|---|
| Plaintiff | ) | |
| | ) | 2:17-cv-00261-GZS |
| v. | ) | |
| | ) | |
| LUKE MONAHAN, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON PENDING MOTIONS**

In this action, Plaintiff Jon Robert Adams, an inmate in the custody of the Department of Corrections assigned to the Maine Correctional Center, alleges that Defendant Luke Monahan denied him access to the courts by imposing unreasonable restrictions on Plaintiff's ability to access the prison law library. The matter is before the Court on the following motions:

1. Plaintiff's Motion for Summary Judgment (ECF No. 4);

2. Plaintiff's Motion for Declaratory Judgment (ECF No. 6);

3. Plaintiff's Motion for Preliminary Injunction (ECF No. 9);

4. Plaintiff's Motion to Inform the Court (ECF No. 11);

5. Plaintiff's [Second] Motion for Summary Judgment (ECF No. 18);

6. Defendant Monahan's Motion for Summary Judgment (ECF No. 22);

7. Plaintiff's [Second] Motion for Preliminary Injunction (ECF No. 33); and

8. Plaintiff's Motion/Brief Regarding Exhaustion Requirement (ECF No. 52).

1

Following a review of the summary judgment record, and after consideration of the parties' arguments, I recommend the Court grant Defendant Monahan's motion for summary judgment and dismiss as moot the remaining motions.

**PROCEDURAL BACKGROUND**

On July 11, 2017, Plaintiff filed his original complaint against Defendant Monahan. (ECF No. 1.) On the same date, Plaintiff filed his first motion for summary judgment (ECF No. 4) and a motion for declaratory judgment. (ECF No. 6.) Shortly thereafter, the Court received Plaintiff's first motion for preliminary injunction (ECF No. 9) and Plaintiff's "motion to inform the court." (ECF No. 11.) On September 11, 2017, Plaintiff filed a second motion for summary judgment. (ECF No. 18.) On October 10, 2017, Plaintiff filed another motion for preliminary injunction. (ECF No. 33.)

On September 15, 2017, Plaintiff filed a motion to amend his complaint to include a denial of access claim against Defendant Deputy Warden Susan Carr. The Court granted Plaintiff leave to assert a claim for injunctive relief against Defendant Carr in her official capacity, but denied Plaintiff leave to proceed against Defendant Carr in her personal capacity because the record reflected that Plaintiff sought to assert a claim regarding library access before Defendant Carr had the opportunity to respond to Plaintiff's related grievance. (Order Granting Plaintiff's Motion to Amend and Recommended Decision After Screening Amended Complaint, ECF No. 25; Order Affirming the Recommended Decision of the Magistrate Judge, ECF No. 43.)

On September 28, 2017, Defendant Monahan moved for summary judgment based on Plaintiff's failure to exhaust the available administrative remedies. (ECF No. 22.) In

2

response, Plaintiff filed an opposition (ECF No. 34) and a "motion/brief" related to the exhaustion requirement. (ECF No. 52.) Through the "motion/brief," Plaintiff asked the Court to excuse him from the exhaustion requirement because he had made four attempts to exhaust that were not properly resolved by prison administrators. (*Id.* at 3.)

**FACTUAL BACKGROUND**

Plaintiff alleges that Defendant Monahan, the unit manager for Plaintiff's cell block, has denied him meaningful physical access to the law library, and that the denial of access has interfered with his ability to conduct litigation.[1] Maine Department of Corrections Policy 24.4, Library Services provides: "It is the policy of the Department of Corrections to provide prisoners with reasonable opportunities to use library services to conduct legal research, address educational needs, and pursue recreational interests." (ECF No. 1-3.) The policy contemplates "physical access to the facility's library at least weekly on a scheduled basis," and that "a selection of library materials" may be provided in general population and other housing units "upon approval of the Chief Administrative Officer, or designee." (*Id.* § VI.A.1, 3, 4.) The policy includes a "special accommodation" provision that permits "additional access to the law library or law library services" for prisoners who are "under court deadlines" or "need to do more comprehensive research." (*Id.* § VI.E.3.) Requests for special accommodation are to be directed "to the Unit Manager, or other staff designated by the Chief Administrative Officer." (*Id.* § VI.E.4.)

---

[1] When Plaintiff commenced this action, he was a party to a matter pending in state court before a medical malpractice prelitigation screening panel, in which matter Plaintiff asserted claims against one or more providers of medical services at the Maine Correctional Center. Additionally, after filing this action, Plaintiff filed another action in this Court. Specifically, on September 14, 2017, Plaintiff filed a claim against certain corrections officers based on their alleged failure to protect Plaintiff from harm presented by other prisoners. *Adams v. Landry*, No. 2:17-cv-00357-JAW.

According to Plaintiff's submissions, Plaintiff's unit manager, Defendant Monahan, with some exceptions, generally permitted Plaintiff one hour each week of physical access to the library, but refused Plaintiff's requests for additional access unless and until Plaintiff demonstrated that he was under a court-imposed deadline.

Department of Corrections Policy 29.1 covers all prisoner grievances, except for matters expressly excluded from coverage in the policy. (Defendant's Statement of Material Facts (DSMF), ECF No. 23, ¶¶ 3 – 4; Policy 29.01, Prisoner Grievance Process, General, ECF No. 23-2.) The grievance policy specifically covers a prisoner grievance that seeks administrative review of any policy, procedure, practice, condition of confinement, action, decision, or event that directly affects the prisoner, that the prisoner believes is in violation of his or her rights or is in violation of Department policies or procedures, and for which the prisoner believes a Department employee or a contractor is responsible. (DSMF ¶ 5.) Plaintiff has not disputed that his claim regarding library access is subject to the grievance policy.

Pursuant to Policy 29.1, a prisoner must first make an attempt at an informal resolution with the designated supervisor before filing a formal grievance with the prison's grievance review officer (GRO). (*Id.* ¶ 6.) If the prisoner's complaint is not resolved informally, the prisoner must file the grievance with the GRO. (*Id.* ¶ 7.) The GRO's assessment of the grievance is subject to administrative appeal, and the final step of the appeal process is an appeal to the Commissioner of the Department of Corrections. (*Id.* ¶ 8.)

Exhibit G to Plaintiff's complaint is an administrative grievance form submitted to Defendant Monahan's supervisor, Unit Two Manager Penny Bailey. (*Id.* ¶ 9.) Plaintiff's submission of Exhibit G to Unit Manager Bailey would qualify as Plaintiff's written attempt at informal resolution. (*Id.* ¶ 10; Aff. of Dennis Shipman, ECF No. 23-4, ¶ 6.) According to Mr. Shipman, Plaintiff never filed the grievance with him, and there is no record of Plaintiff ever submitting any other grievance to him regarding his access to the law library. (DSMF ¶¶ 11 – 12; Aff. of Dennis Shipman ¶¶ 7 – 9.) The Department of Corrections has no record of Plaintiff filing a grievance appeal to the Commissioner. (DSMF ¶ 13; Aff. of Kelene Barrows ¶¶ 4 – 5.)

Plaintiff asserts the prisoner grievance process at the Maine Correctional Center is "broken," "misused," and "abused" by the staff. (Plaintiff's Opposition at 4, ECF No. 34.) Plaintiff maintains there is a history of grievances being sent to the GRO that are never returned. (*Id.*) Plaintiff argues that a prisoner exhausts available administrative remedies when the prisoner's initial grievance is ignored. (*Id.* at 5.) In further support of his opposition, Plaintiff filed a number of exhibits, or attachments, including affidavits from other inmates, in an apparent effort to establish the futility of the grievance process.[2]

In an affidavit, Plaintiff asserts: "Based on personal experience, I have attempted to send many of my grievances to the prison's grievance officer, Dennis Shipman, at my

---

[2] Zachary Tomaselli states that he has filed grievances with the GRO that have been "ignored and never answered within the 30 day limit." (ECF No. 34-6.) Robert Steiner reports that he has filed grievances with the GRO, and it is "common process" for Maine Correctional Center staff to lose or misplace grievances, or to let them "run their time limit so that no resolution can be obtained." (ECF No. 34-8.) Chad Beal asserts he has filed grievances with the GRO that "have gone ignored and unanswered, and [were] never returned back to me." (ECF No. 34-9.) Jon Hall attests that he has filed non-frivolous grievances with the GRO that have been ignored. (ECF No. 38.)

attempt to properly utilize the grievance process." (ECF No. 34-7, ¶ 4.) He also contends that many of his grievances "have gone ignored and unanswered." (*Id.* ¶ 5.)

Plaintiff later filed another affidavit regarding his efforts to obtain additional law library access. (ECF No. 50-1.) Plaintiff represents that he submitted "prisoner requests to my unit manager, Defendant Monahan." (*Id.* ¶ 6.) Plaintiff further contends that he "took [his] problem to the Warden Scott Landry via the 'Prisoner Request Slip' process (Compl. Ex. J, ECF No. 16-1)," and "Warden Landry denied my request and stated that my one hour per week was sufficient and if I face a 'legal deadline' my request would be reconsidered." (*Id.* ¶ 8.) [3]

Plaintiff asserts he "made four (4) separate grievance attempts, at an attempt to exhaust my problem through the prisoner grievance process in the manner of a complaint." (*Id.* ¶ 9.) Plaintiff states that his four attempts "to file a grievance at my attempt utilize [sic] the grievance process informal resolution, were unsuccessful and it was a 'pass-the-buck' problem causing me the 'run around,' which led to me being frustrated, discouraged, angry and not knowing what to do next." (*Id.* ¶ 12.)

According to Plaintiff, two of the four attempts were made just before he filed the complaint in this matter, and two of the attempts were made after the date on which he filed the complaint in this matter. The four attempts consist of the following: he submitted his first informal grievance on June 23, 2017, to Deputy Warden Glean Brown, who instructed Plaintiff to address the matter to Unit Manager Penny Bailey (*Id.* ¶ 13); on June 28, 2017,

---

[3] Plaintiff received the Warden's response to his "request slip" on or around July 17, 2017. Plaintiff filed his complaint in this Court on July 11, 2017. (ECF No. 16-1.)

Plaintiff addressed the matter with Unit Manager Bailey, who marked the grievance "not resolvable," and informed Plaintiff that he was not being denied law library access (*Id.* ¶ 14); Plaintiff filed what he describes as his third grievance, on August 29, 2017, with Warden Scott Landry, who marked the grievance "not resolvable," and instructed Plaintiff to take the matter to Defendant Monahan or to Defendant Monahan's supervisor, Deputy Warden Carr (Defendant Carr) (*Id.* ¶ 15); and on September 1, 2017, Plaintiff filed what he describes as his fourth informal grievance with Defendant Carr. Plaintiff states the filing with Defendant Carr "was still an informal resolution attempt," but that Defendant Carr never responded. (*Id.* ¶ 16.)[4] Plaintiff states Defendant Carr had five days under the policy to respond to his fourth informal attempt to resolve his grievance and that he filed a motion to join her in this action approximately nine days after the five-day time limit expired. (ECF No. 50-1, ¶ 21.)

## DISCUSSION

### A. Defendant's Motion for Summary Judgment

Through his motion for summary judgment, Defendant Monahan contends that Plaintiff's action must be dismissed because Plaintiff did not exhaust the available administrative remedies before filing this action.

### 1. Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[4] Plaintiff filed another affidavit on October 11, 2017. (Affidavit of Jon Robert Adams, ECF No. 35-3, ¶ 7: "In the past, when I've submitted grievances to [the GRO], my grievances have gone unanswered & ignored well beyond the respected [sic] thirty (30) day limit.")

7

of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy,* 782 F.3d 73, 77 (1st Cir. 2015). If the court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied to the extent there are supported claims. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

2. **Analysis**

Federal law requires a prisoner to exhaust the available administrative remedies before initiating a lawsuit pursuant to 42 U.S.C. § 1983. Specifically, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see*

8

*also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA [Prison Litigation Reform Act] and that unexhausted claims cannot be brought in court.").

The Supreme Court has held that § 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90 – 91. "Compliance with prison grievance procedures … is all that is required … to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

A defendant may raise the § 1997e exhaustion requirement as an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Ramos v. Patnaude*, 640 F.3d 485, 488 (1st Cir. 2011) ("The Supreme Court made it plain … that exhaustion under § 1997e(a) is not a jurisdictional condition, and has held it to be an affirmative defense." (citing *Jones,* 549 U.S. at 212)). Because failure to exhaust administrative remedies is an affirmative defense rather than a jurisdictional issue, initially, the defendant bears the burden of proof. *Jones*, 549 U.S. at 216. To satisfy that burden, the defendant must establish "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca,* 747 F.3d 1162, 1172 (9th Cir.) (en banc),

*cert. denied sub nom. Scott v. Albino,* 135 S. Ct. 403 (2014).[5] Thereafter, the plaintiff must present evidence that demonstrates "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Here, Defendant has established that an administrative remedy (i.e., a formal grievance process) was available to Plaintiff regarding his complaint of inadequate library access, that Plaintiff did not file a formal grievance after he received an adverse response from Unit Manager Bailey to his informal grievance,[6] and that Plaintiff did not file any other formal grievance on the issue. Defendant thus has satisfied his initial burden; Plaintiff, therefore, must demonstrate that the administrative remedy was unavailable to him, or, at a minimum, that a factual issue remains in dispute as to the availability of an administrative remedy.

Plaintiff has not challenged Defendant's record assertion that Plaintiff did not submit to GRO Shipman a grievance regarding his complaints about law library access. Instead, he contends that grievances are regularly ignored in an apparent attempt to demonstrate that an administrative remedy was not available and thus excuse his failure to file a grievance with GRO Shipman. Plaintiff's argument is unavailing. In *Ross v. Blake*,

---

[5] To be an available remedy, a grievance procedure must actually apply to the type of claim at issue. *Bean v. Barnhart*, No. 1:13-cv-00196-NT, 2015 WL 3935777, at *5 (D. Me. June 26, 2015) (citing *Booth v. Churner*, 532 U.S. 731, 736 n.4 (2001), and *Malik v. D.C.*, 574 F.3d 781, 785 (D.C. Cir. 2009)). *See also Davis v. Fernandez*, 798 F.3d 290, 294 – 95 (5th Cir. 2015) ("Whenever defendants claim a failure to exhaust, they have the burden to prove that the plaintiff did not exhaust administrative remedies that were actually available to him.").

[6] Even if the form submitted to Unit Manager Bailey is construed as a formal grievance, Plaintiff did not file an appeal from Unit Manager Bailey's decision.

136 S. Ct. 1850, 1856 – 57 (2016), the Supreme Court, while confirming that the exhaustion of available administrative remedies is mandatory, noted three limited "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id*. at 1859. Plaintiff's contention potentially implicates one of the circumstances described by the Court:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office – but in practice the office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In [the words of *Booth v. Churner*, 532 U.S. 731, 736 (2001)]: "[S]ome redresss for a wrong is presupposed by the statute's requirement" of an "available" remedy, "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief." When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy."

*Id*. at 1859 (citations omitted). [7]

In this case, Plaintiff has presented no credible evidence to suggest that GRO Shipman "decline[s] ever to exercise" his authority to review initial formal grievances, or that there is no potential for relief in appropriate cases. *Id.* Not insignificantly, Plaintiff's own submissions establish that he received a response when he presented an informal grievance to the appropriate official, and at least in one instance, direction as to how to

---

[7] The other circumstances identified by the *Ross* Court involve administrative schemes "so opaque" they are "practically speaking, incapable of use," and acts by prison administrators that "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859 – 60. The record does not support a finding that the Department's Prisoner Grievance Process is unclear or too difficult to understand. The record also does not include any evidence of machination, misrepresentation, or intimidation.

proceed when he submitted his informal grievance to the incorrect official. (Complaint, Exhibit G, ECF No. 1-7; Affidavit of Plaintiff, ¶ 13, ECF No. 50-1). Plaintiff concedes that he did not file a formal grievance after his attempts to resolve the issue informally. (*Id*. ¶¶ 18-19.) Rather, on July 6, 2017, eight days after receiving a response to the request to resolve the grievance informally, Plaintiff signed the complaint in this matter.[8] (ECF No. 1.) Given that Plaintiff never filed a formal grievance with the grievance review officer, Plaintiff's general assertions that other grievances have been ignored is insufficient to generate a factual issue regarding the availability of an administrative remedy. To the extent Plaintiff attempts to rely on Defendant Carr's alleged lack of response to a later grievance to satisfy the exhaustion requirement, Plaintiff's argument is unpersuasive. While courts have excused a failure to exhaust where the evidence indicates a proper grievance was ignored, *see*, *e.g.*, *Andres v. Marshall*, 867 F.3d 1076, 1078 – 79 (9th Cir. 2017), Plaintiff cannot be excused from the exhaustion requirement based on the handling of a grievance that was filed after Plaintiff commenced this action. *Pavao v. Sims*, 679 F. App'x 819, 824 – 25 (11th Cir. Feb. 10, 2017) (prisoner's "efforts to exhaust after filing his complaint are not relevant to the question of whether he exhausted his administrative remedies as required by the PLRA").

On this record, therefore, Plaintiff has not demonstrated that a factual issue remains in dispute as to whether he exhausted the available administrative remedies prior to filing suit. Although he initiated the process with the filing of an attempt to resolve the grievance

---

[8] The envelope by which the complaint was forwarded to the Court is post-marked July 7, 2017. (ECF No. 1-9.)

informally, he did not proceed beyond the informal level. Plaintiff's alleged frustration with GRO Shipman's handling of prior grievances is insufficient to generate an issue regarding the availability of the grievance process.⁹ In short, the "facts on the ground" fail to demonstrate absence of potential relief through the grievance process. *Ross*, 136 S. Ct. at 1859. *See*, *e.g.*, *Green v. Haverstick*, No. 16-2523, 2017 WL 5171244, at *2 (6th Cir. Aug. 30, 2017) (affirming grant of summary judgment despite evidence of prior disregard toward grievance activity where the record demonstrated that grievance concerning the claim in issue was accepted); *Godbey v. Wilson*, No. 1:12-cv-01302, 2014 WL 794274, at *5 (E.D. Va. Feb. 26, 2014) ("prisoner cannot exhaust his administrative remedies by failing to follow the required procedural steps, and the proper return of an improperly filed grievance does not serve to exhaust a prisoner's administrative remedies").

In sum, the uncontroverted record evidence establishes that an administrative remedy was available to Plaintiff. The administrative process required Plaintiff to attempt an informal resolution of any grievance and, if the grievance is unresolved, the submission of a formal grievance to GRO Shipman to be followed by two levels of appeal, if the grievance is unsuccessful before GRO Shipman. While the record demonstrates that

---

⁹ The Department's Prisoner Grievance Process provides for additional levels of review beyond the initial formal grievance submitted to the Grievance Review Officer. While a prisoner must exhaust all levels of the administrative process, *Johnson v. Thyng*, 369 F. App'x 144, 146 – 47 (1st Cir. 2010) (per curiam), the Department's Policy states that a prisoner's access to the second level of review is conditioned on the "receipt of the response from the Grievance Review Officer." (Prisoner Grievance Process, Procedure D.1, ECF No. 23-2.) Therefore, where a prisoner properly pursues informal relief and then files a first level grievance with the GRO, if the first level grievance is ignored and not returned, the prisoner would have exhausted available administrative remedies because the process beyond the level one grievance would have been rendered unavailable to the prisoner. Plaintiff's concern that GRO Shipman might have ignored any level one grievance he filed did not excuse Plaintiff from availing himself of the process, where such conduct on the part of GRO Shipman would have meant that Plaintiff had exhausted the available remedies.

Plaintiff initiated the process with an attempt to resolve the grievance informally, he did not exhaust the available remedies as he did not proceed beyond the initial stage of the grievance process.[10] Accordingly, Plaintiff's § 1983 claim for deprivation of his right of access to the courts is an unexhausted claim barred by 42 U.S.C. § 1997e(a). Defendant Monahan, therefore, is entitled to summary judgment.

**B.      Plaintiff's Claim Against Defendant Carr**

Although Defendant Carr has not yet filed a response to Plaintiff's complaint, given that Plaintiff's claim against Defendant Carr is limited to a claim for injunctive relief in the event Plaintiff demonstrated that he was deprived of his constitutional right of access to the courts, and given that Plaintiff cannot proceed on his claim based on his failure to exhaust the available administrative remedies, Plaintiff cannot prevail on his claim against Defendant Carr.

**C.      Plaintiff's Motions**

Plaintiff has filed the following motions: Plaintiff's Motion for Summary Judgment (ECF No. 4), Plaintiff's Motion for Declaratory Judgment (ECF No. 6), Plaintiff's Motion for Preliminary Injunction (ECF No. 9), Plaintiff's Motion to Inform the Court (ECF No. 11), Plaintiff's [Second] Motion for Summary Judgment (ECF No. 18), Plaintiff's [Second] Motion for Preliminary Injunction (ECF No. 33), and Plaintiff's Motion/Brief Regarding Exhaustion Requirement (ECF No. 52). Because Plaintiff cannot proceed on his claim

---

[10] Even if Plaintiff's submission to Unit Manager Bailey is construed as a formal grievance, the record lacks any evidence to suggest that Plaintiff appealed from Ms. Bailey's determination that the complaint was not resolved. Because the prison grievance policy includes an administrative appeal process, the record establishes that Plaintiff did not exhaust the available administrative remedies.

based on his failure to exhaust the available administrative remedies, Plaintiff's motions are moot.[11]

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendant Monahan's Motion for Summary Judgment (ECF No. 22), and enter judgment in favor of Defendant Monahan and Defendant Carr. I also recommend the Court dismiss as moot Plaintiff's Motion for Summary Judgment (ECF No. 4), Plaintiff's Motion for Declaratory Judgment (ECF No. 6), Plaintiff's Motion for Preliminary Injunction (ECF No. 9), Plaintiff's Motion to Inform the Court (ECF No. 11), Plaintiff's [Second] Motion for Summary Judgment (ECF No. 18), Plaintiff's [Second] Motion for Preliminary Injunction (ECF No. 33), and Plaintiff's Motion / Brief Regarding Exhaustion Requirement (ECF No. 52).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 11th day of January, 2018.

---

[11] To the extent Plaintiff's motions included substantive arguments or record evidence that was relevant to Defendant's motion for summary judgment, I considered the arguments and evidence.